Okay, we'll move to our second argument of the morning in Appeal No. 24-1890, the United States v. Martinez. Yeah, Mr. Ranga, did I say that right? Okay, nice to see you and Mr. Kinstra, nice to see you. Whenever you're ready. May it please the Court, my name is Brett Wieringa and I represent Ausencio Martinez. This appeal asks whether the police may invoke Illinois' Commercial Vehicle Safety Inspection Program as a facade to pursue an unrelated drug investigation. The answer has always been no. Administrative inspections are a departure from the time-honored principle that a search is reasonable if it's based on individualized suspicion. The Supreme Court has permitted suspicionless inspections only because their purpose is not to ferret out crime. Here, police admitted they singled out Mr. Martinez because they received a tip his vehicle might be carrying narcotics. Under decades of precedent, that pretextual stop was unconstitutional. When did the pretext take place? The pretext took place right at the beginning. I think that the best way of looking at it is, would police have stopped this truck if they had not been interested in investigating crime? What difference did that make? I mean, what harm did your client suffer from the administrative stop? Well, he suffered, he was pulled over by police who abused their discretion for this administrative program to pursue evidence of a drug investigation that they would not have been able to otherwise. Why did they abuse their discretion, though? If they would have pulled him over on the administrative stop, and they were unable to develop reasonable suspicion, they never would have conducted the search that resulted in the finding of the drugs. But that was the whole point of the inspection. I mean, we see these... So what? Well... Let me put it to you differently. Let's say the police officers are looking for a murder weapon in a particular drug house, and they have evidence of drug activity within the home, and they get a search warrant to look for drugs, but they're really not looking for drugs, they're really looking for a murder weapon. They think it might be there based on a tip, but that's all they have. But they have more than enough probable cause to go in and search for drugs. What's wrong with that? The Supreme Court has made very clear that that's fine. Right. So what's the difference? Here... Follow me through here. Here, the law allows the administrative stop. The police officer conducts the administrative stop. The administrative stop and the search of the records in itself is no problem. I mean, the police didn't discover the drugs during the administrative stop. The police only discovered the drugs after the dog walked around the car, after the officer had developed reasonable suspicion for the subsequent search. So in other words, there's this break in your pretext analysis, I think. With respect, I think... Here's the problem. I think it's easy... This looks weird because we know that police have discretion to make these administrative searches, but I think if you take a... Maybe that's where we should start, as to what is not in dispute. Okay? And so I want to make sure that I'm following your argument, is that are you agreeing that the officer was authorized to stop the truck under Illinois law? Yes, if... So long as the officer was not looking for evidence of crime as motivation for making that stop, yes. Total discretion, otherwise, to pull over this truck and... And so that's where the questioning is going. So now we're bleeding into this Fourth Amendment question of... So that I make sure that I understand the argument. If they were authorized to make the stop, and you're not contesting that, under the Fourth Amendment, when are we able to bring in the notion of the subjective intent of the officer, and why would that matter? So you're able to bring in the subjective intent of the officer whenever you have a search, like this one, where it couldn't possibly have been based on any objective circumstances. In most cases, like the drug house hypothetical, you have these objective circumstances, like evidence of drugs, that justify getting the warrant or making the search, and the court can evaluate those objectives. But isn't that the whole point of the administrative search requirement? There does not have to be. You can pull over a truck at any point and conduct the administrative review, or the administrative search, we'll call it. Yes, that is the point. But here's the problem. Imagine that there were never, that the state had never enacted this program. Now, I don't think anybody would dispute that the officer here, receiving this drug tip, could not have pulled this truck over without believing he had reasonable suspicion. Well, sure he would. He would have found some other pretext for the stop. He would have waited for the truck to switch lanes without using a turn signal, or weaved over the right line, and then he would have pulled him over. He used pretext all the time. I won't contest that counterfactual. What I have to say here is that nobody disputes the officer could not have pulled over this truck without reasonable suspicion in the absence of an administrative scheme. And so it is very weird, and in fact unconstitutional, that the fact that the state has enacted this suspicionless search program suddenly allows officers to circumvent the probable cause requirement that applies to every other criminal search. There's no probable cause requirement. Sorry, reasonable suspicion. It's reasonable suspicion. And I think that's what we're trying to parse out. We're taking these different constitutional principles off the shelf and merging them. And so we need to keep them separate in the sense that if the argument is that the parties are not disputing that Illinois law allows or permits a suspicionless stop to search property, if so, the truck has been stopped. Well, the constitutional violation was complete when the truck was stopped initially. I apologize if I've given sort of a misimpression here. I don't agree that. I agree that in general the Illinois police can stop trucks without suspicion. What they may not do is use their discretion to choose which truck to stop based on their desire to investigate crime. And so in this case, the very stop of the truck from the get-go was unconstitutional because the way the police chose which truck to stop was because they wanted to follow a drug tip and not because they were at all interested in the safety inspections. If you represent it, go ahead. Oh yeah, so I want to make sure I understand what you're telling me is that the argument is that there was a Fourth Amendment violation because the officers used a lawful administrative inspection as pretext to investigate criminal activity? That's right. It's kind of an odd fact pattern. It is unusual. It's odd. And what's odd about it, if we just change it for a second, I think the dialogue that's going on here, at least as I'm hearing it, is as follows. If we say this happened in State X, not Illinois, and State X did not have any kind of program at all, zero, the state is not even going to attempt in State X to justify the stop on the basis that it was an administrative search because they have no administrative search program. That's the challenge is, not the cascading effects of what happened. He got nervous and he talks about going to Nashville and all this other business. Just focused on the stop, the only way they could pull the semi-truck over would be on an objective basis to identify a traffic violation. Right. Or a reliable enough tip to give them reason to investigate. Exactly. Okay. But this particular fact pattern occurs in a state where there is an administrative search program. And what makes the case odd, in my view, or it's just different than what we've seen in the prior case law, is that it's pure in this sense. Officer Muzzillo comes in and says, oh, the only reason I stopped the truck was not because I was out doing administrative stops that night. I stopped the truck because a colleague said, hey, we think they're running drugs up 57. And Muzzillo, I mean, we have to accept that. That's the only reason he offers. So most of the cases that I've seen are, at a minimum, like mixed motive case. No, it's very. It's kind of pure and odd in that way. It's not unique, though. A Roscoe from the Ninth Circuit is the exact same. No, fair enough. But, I mean, there's not a shopping cart full of these things out there. No. Pretty rare. Yes. It's the heartland for this problem. Yeah, it's kind of like, you know, run it by the law students in the criminal procedure class kind of case. Right. And that's why I think, frankly, we have really great facts for why this line of Supreme Court and Seventh Circuit precedent means that this evidence should have been suppressed. Because there's no doubt that the police were using this as a pretext. I mean, the frequency with which this is going to come up is so remote. Happened to here, but. Right. Yes. And we have it in Roscoe. We have it in Johnson in the Tenth Circuit. And then the Supreme Court in Berger mentioned another case, Pace, out of New York, where the court said, no, this was pure pretext, and so that's why we didn't have to consider otherwise. Before I let you off the hook, can I ask you, would you mind if I ask you one other question? No, please. Okay. And that is, if you had to just synthesize and distill your position, and you suppose for a minute that you prevail, what rule of law would you like us to announce? How, when we came to the kind of heart of writing the opinion, would you recommend we articulate the rule that's governing the outcome here? There's a case from the Seventh Circuit, I think it's Marling versus Littlejohn, and it says that the police were entitled to use their discretion to search on any basis other than suspicion of criminal activity. And that's the rule that I think the court should use in this case. The police were entitled to conduct these kinds of administrative searches and to use their discretion to do so on the basis of any reason other than the suspicion of criminal activity. Okay. You want to save the remainder of your time? I would, thank you. Okay, you're welcome to. Okay, we'll hear from the government. May it please the court. Good morning, Your Honors. Jeff Kinster on behalf of the United States. It's undisputed in this case that Illinois's regulatory program is valid, and that the valid program in fact authorized the very stop that occurred in this case, which leads directly to two conclusions. First is that that stop was reasonable under the Fourth Amendment. And second, that even if a court were to hold otherwise in hindsight, the exclusionary rule would not apply. But on the first point, the Supreme Court has repeatedly and emphatically emphasized, including in this very context, that the Fourth Amendment requires an objective assessment of an officer's actions, not a subjective inquiry into his thoughts. In Villamante-Marquez, for example, it arose in the same context at issue here. It was a warrantless, suspicionless stop conducted pursuant to a state regulatory program that allowed document inspections for regulatory compliance. There, the defendant made essentially the identical argument that the defendant makes here, saying that the stop was carried out by the state police, who were acting on an informant's tip, that the defendant was carrying contraband. And the Supreme Court rejected that argument outright as a matter of law. It said, we've rejected that argument before. We reject it again. And it relied on its decision in Scott, where the court said exactly that, that the Fourth Amendment requires an objective assessment into officers' actions, and that subjective intent alone will not render an otherwise reasonable conduct unlawful. Now, that's consistent with the Supreme Court's longstanding precedent both before and after. As Wren described it, for example, describing Villamante-Marquez's holding, the Supreme Court said that it flatly rejected the idea that an ulterior motive will serve to strip agents of their legal justification for their conduct. Again, in Edmond and Brigham City, the Supreme Court came back to that point, where its discussion of and understanding of the role of purpose and intent in the administrative context was essential to its reasoning and its analysis in those cases. In Edmond, the whole question was how an officer or how the purpose factors in to the inquiry or the legality of a programmatic search. And so there's an extended discussion. And the court's difficulty, of course, was to reconcile its allowance of an inquiry into programmatic purpose with longstanding precedents that says that an officer's subjective intent is off the table. So your position is we don't go down that path because that's not being... Exactly. That's what the district court held. That's the government's position. And that's consistent with longstanding precedent. In fact... There's no question. I don't think, and I don't think Mr. Ruango's arguing to the contrary that at least in the code book or the regulations book, the program here has non-law enforcement purposes. It's about safety. It's about making sure the drivers aren't tired. They're keeping their log books. They've had the truck weighed, all that kind of stuff, right? Right. There's no question about it. For discussion purposes, and I think that's the state of hypothetical, though, tweak the fact pattern a little bit, okay? And suppose that the Illinois chief of police sat the team down of troopers and said, look, there's a lot of drugs being run up and down 57. And we really need to crack down on this. So here's what I would like you to do. I would like you to uptick your administrative stops when you see out-of-state plates or something, okay? And ask some more questions than you otherwise would because I think we're going to get on to some kind of fishy behavior and we're going to get at this drug activity a little bit more. And suppose there's a transcript of that instruction that the chief of police gives. Would the legal analysis change at all in the government's  Potentially, but it would be at the programmatic level because what your honor is describing is actions by the... Can I add one thing to that? Why would it change at the programmatic level? Wouldn't it change, though, if that was the legislature that was having that discussion as opposed to the chief of police? Principally. The thing about the fact pattern that makes it... Look, it's not the fact pattern. That's why we call it a hypo, right? The thing about the hypothetical that changes is you're taking a program in the code book, okay? And then in its operation, you're overlaying a pretty clear law enforcement purpose. That's why I'm talking about the instruction of the chief of police, right? And so you would open up an opportunity for a hypothetical defendant to argue that the, quote, program there is the program... You should focus on the program as it operated. That's why you're hesitating, I think. Do you mind if I add to Judge Scudery's question here before you answer? Because I'm looking at the Supreme Court case in Berger. One of the things that we have to consider is whether or not the warrantless inspection is necessary to further the regulatory scheme. Because if it's not, right, then we begin to question the reasonableness under the Fourth Amendment. And so I wanted to plug that in before you answered. Right. So a couple thoughts. The first is that in Edmund, the court talked about primary purpose. It didn't discount the possibility that there could be dual motives. So I think that would be one concern. My other thought is that I think that hypothetical sort of mirrors the circumstances in Al-Kid where it was there the policymaking authority, the attorney general there was the defendant who used a program in effect, a statute in effect, and the defendant was arguing that he was using it for unlawful motives. The Supreme Court is a programmatic purpose case and asked whether Edmund was even relevant in that context. The court's holding was it? The mixed motive cases are cases where you're going to have the upper hand most of the time. Right. I don't even think they dispute that. You're going to win a lot of those mixed motive cases because all you have to do is point to the lawful side of the motive. Right. But of course here the officer's motive itself is just entirely irrelevant. It's only the programmatic purpose that's even relevant. And so Your Honor's hypothetical introduced a potential additional programmatic purpose at best, but it wouldn't be the officer's purpose. And that I think gets really to the point is that the validity of these stops and the reasonableness of the inspections is all baked into the Berger criteria themselves. Those are the criteria that ensure that these stops in fact remain reasonable. My question though is a little different. Where do we measure the programmatic level? Do we measure it with the chief of police? Do we measure it with a sergeant? What about a sergeant on the night shift? Is he a policymaker that we can then examine at the programmatic level? Do we look at the purpose of the law as to why the law was passed? Where do we measure the programmatic level? The case law all does it at the statutory level, the program itself, whatever enacted the program. I've not seen cases that try to introduce individual policymaker discretion into the analysis, but I mean there are a dozen or so circuit courts that have addressed these very sort of commercial motor vehicle inspections and it's always at really the policy itself rather than looking at individual policy makers' gloss on it, for example. I want to get back to the first question I asked. Does pretext really have anything to do with this case? And what I mean by that is I think it would be different if the administrative search itself resulted in the discovery of the drugs, but it didn't. There's intervening facts here that lead to reasonable suspicion. So why do we even have to consider whether or not pretext matters here as a reason for the stop? I guess the argument would be that if there was pretext, it was illegal, then we suppress everything, right? Fruit of the poisonous tree, but I suspect that's your argument why the exclusionary rule does not apply. Yeah, so I mean I suppose that's the defendant's theory, but the fact that what the officer did was in fact authorized at every step by this program is what shows that the stop is reasonable and the defendant's suggestion that a subjective inquiry is necessary because an objective inquiry is simply impossible is just incorrect. It's an objective inquiry in this context, just the same as any other context. The stop itself has to be objectively authorized by whatever the applicable legal justification is here in the program, and then the officer's conduct during the stop has to be objectively within the scope of what the program offers. This is where the case is odd because I think what Mr. Moringa is going to say, I won't put words in his mouth, he speaks very well for himself, is to call the stop an administrative stop at the get-go, right, at kind of T0, is 100% counterfactual on this fact pattern. And he's going to say, how do we know that? We know that because this guy named Mozilla, the sheriff or state cop, comes in and says, the only reason I pulled the truck over was because of the drug information that came my way. That's what makes the case kind of  But what makes it not contextual? So he's going to say it's 100%, not 99%, it's 100% counterfactual to call it an administrative stop. Well, so that's not correct because what determines if it's an administrative stop is the officer's actions. And so the stop here, the program, had objective criteria for when the stops can occur. I mean, that's the ground. But that's not what he said. Well, I mean, I don't know what else you can say in response to the question other than what you just said. Well, I mean, that's what the Supreme Court says. It's what this court has said, that an officer's motives, his officer's subjective purpose, is simply irrelevant. As this court said in Natchez, for example, it would turn the Fourth Amendment on its head to complain not about the dearth but the plethora of grounds for believing that an individual is engaged in the wrongdoing. Instead, it's simply the general rule that if a stop is objectively reasonable, meaning the officer's conduct falls within the scope of what the legal justification permits, then the existence of a particular subjective intent is entirely irrelevant. Now, here, the program itself governed which vehicles may be stopped, when they may be stopped, what officers may stop them, what can occur during that stop. The interaction here complied in every respect with those objective criteria. The defendant was in a commercial motor vehicle. It was in operation. It was stopped by an Illinois state policeman who was then authorized to conduct a Level III inspection. Every one of those criteria is objectively and demonstrably satisfied here, and what shows that this is a reasonable stop under the Fourth Amendment is that Illinois' program is valid and that the officer's actions at every moment fell within the scope of what that stop permitted. On top of that, the defendant's arguments that his position better serves the Fourth Amendment, the Supreme Court has repeatedly recognized that even-handed law enforcement practices are best achieved by objective standards of conduct rather than subjective inquiries into intent. Is it the position, then, of the government that these inspections can be utilized to further a criminal investigation? The government's position is that an officer's subjective intent simply doesn't matter as long as the officer complies with what the program allows, acts within the scope of the actions during those stops that the program allows, that the officer's subjective intent is simply irrelevant. And so if an officer has additional grounds for suspicion, that is not a ground for invalidating the search, just as the court explained in Natchez. I'm sorry. As the court explained in Natchez, where the court said that it would be backwards to say that if an officer is entitled to take these actions, that an additional level of suspicion, then, deprives him of that authority. So going back to Judge Scudder's hypothetical, the sergeant at the beginning of the shift saying, we've seen some activity and trafficking, can the officer say let's use this inspection tool to investigate? The law would not prohibit that, but the tool itself is what prohibits that from being used as a tool of harassment or to allow investigation, because all the officer was able to do here was to conduct a stop and then conduct a level three investigation. That stop was no more intrusive and no less justified based on what was in the officer's mind. That's exactly what the First Circuit held in Gonsalves in rejecting a similar claim. The Fifth Circuit has squarely rejected the sort of argument that the defendant's making here in cases like United States v. Thomas, United States v. Jaime, this court, of course, in Natchez. The defendant relies on an outlier case from the Ninth Circuit that's really subject to criticism even within the Ninth Circuit. This court's law is clear, the Supreme Court's case law is clear, that it's only the programmatic purpose that's relevant and that so long as the program itself is valid, which means, of course, if the program is valid, that means that the inspections it authorizes are, in fact, further a substantial government interest and are governed by an adequate substitute for a search warrant that provides notice to the regulated parties and limits officer discretion. So if those criteria weren't met, the program itself wouldn't be valid. But because the program here is valid, that means that the stops it authorizes, including this one, which was authorized within the scope of that program, was reasonable because it satisfied all those criteria and was governed by an adequate substitute for a search warrant. I'd be happy to touch briefly on the good-faith exception or a reasonable suspicion if your auditors have any questions, but otherwise I'd stand on the governor's brief. Okay, very well. Thank you, Mr. Kinstra. Thank you. Mr. Moringa, you've got some time left. I would like to start with the police chief hypo. I believe that this court has already answered that hypothetical, not in so many words, but pretty close in footnote 18 of programmatic purpose behind this urinalysis testing was not to adduce evidence of crime. But then, in footnote 18, the court says, but if it turns out that this program is being used for the purpose of adducing criminal evidence, then you should feel free to come back and bring a challenge to that. And I think that that's directly on the point. And I also think that we've pointed to the relevant place in Medlock where we also believe that this court got into the pretext of the officer searching the student dorm room for marijuana and why that wasn't pretext. Did your client consent to the administrative search? Consent, no. Why not? He's driving a truck. To the administrative search. Yeah, to the administrative search. The law is clear. He's driving a truck. He consents. Under the programmatic requirements of the administrative search, he's driving a truck. He knows that he can be stopped anytime for an administrative search. Why is that consent? He consented to constitutional administrative searches, which is to say he consented to administrative searches not being used for the purpose of investigating crime, because that's what Supreme Court precedent allows. And so I think it would be unfair to imply consent to an unconstitutional stop in this case. I understand that there is language of consent in some of these administrative search cases where you say the whole reason we allow these suspicionless searches is because it's such a heavily regulated industry that you're basically consenting to government oversight. But what you're not consenting to is unconstitutional uses of that oversight. There was another case that you cited outside of Shale. What was the second case? I couldn't hear you. I'm sorry. Shale. And then the other case was Medlock versus Trustees of Indiana University. I mean, I think the point that you're making, the substantive point that you're making from Shale, I think has to be right, because it aligns. How else do you explain what went on in Edmond? I mean, Edmond is not a situation where the General Assembly of the state passed a checkpoint program or anything like that. You know, the police responding to local needs set up a checkpoint program, and it just turned out that it did not have purposes that would have satisfied the administrative search doctrine. It was too tinged with law enforcement. That's right. And so that's why I think, I don't know that it answers the question here, but substantively you just have to figure out how's the program operating. And there'll be fights about that on facts and evidence and what have you. Right. Yes. But here we have the purest imaginable case. That's what makes it odd, right? I mean, or just not odd. It's just not the typical kind of scenario that we see arising in this context, this area of law. That's true. But I think you do see uses of police pretext pretty commonly where they can hide behind an objective analysis, like in this court's en banc decision in Johnson where they stopped this car within 15 feet of a crosswalk in sub-zero temperatures, like they were going to be blocking somebody from walking. They obviously weren't. No. I mean, Judge Kirsch, he's a million percent right. We could fill this courtroom with copies of cases about the turn signal was out, the backlight was out, he weaved over the line, and they would all cite Wren, every one of them. Right. And in those cases you can hide behind the objective analysis, but here there's just nothing to objectively analyze. You singled out this truck based on pure discretion as a pretext. Okay. Hearing no further questions, we will take the appeal under advisement with thanks to both counsel and Mr. Wenger, I want to extend special thanks to you and your firm. You took this case on appointment. We very much appreciate that. And Mr. Martinez, you know he was very well represented. Thank you. Thank you, Your Honor.